## AFFIDAVIT

I, Lisa Rudnicki, having been duly sworn, on oath depose and state that:

1. I am a Special Agent with the Bureau of Alcohol, Tobacco and Firearms ("ATF"), and have been so employed since February, 1996. In that capacity, I investigate violations of the federal firearms statutes and have participated in numerous investigations relating to the unlawful possession of firearms and ammunition.

2. Based on my training and experience, I am aware that Title 18, United States Code, Section 922(g)(1) makes it a federal offense for any individual who has previously been convicted of a crime punishable by imprisonment for a term exceeding one year to possess a firearm or ammunition in or affecting interstate commerce. Having so stated, I make this affidavit in support of a complaint charging an individual named **ANTHONY LIMA** with being a felon-in-possession of a firearm and ammunition in violation of that statute.

3. The statements contained in this affidavit are based on my own investigation and on information provided to me by officers of the Boston Police Department. This affidavit is submitted for the limited purpose of establishing probable cause to believe **LIMA** violated 18 U.S.C. §922(g)(1). It therefore does

not set forth all of the information that I and other law enforcement personnel have obtained during the course of this investigation.

4. At approximately 4:10 A.M. on November 13, 2010, Officers McHugh and Velasquez were on patrol in uniform in the Uphams Corner area of Dorchester. The officers were aware of a recent radio call involving an attempted traffic stop of a red Jeep Cherokee with Maryland license plates in the area of Edward and Everett Square that resulted in a high speed chase down the Southeast Expressway. Officers involved in that chase (which was terminated for safety reasons) reported that the Jeep had four occupants who included three males and 1 female including one male with dreadlocks.

5. Shortly after the initial chase was terminated (and the Jeep was last seen heading down the southeast Expressway at speeds approaching 100 mile per hour), other officers reported seeing a Jeep matching that description. These reports indicated that the Jeep was headed up Washington Street towards Columbia Road and took a right onto Bowdoin Street. The Jeep was therefore traveling in the general direction of Uphams Corner and Edward and Everett Square, where the incident resulting in the chase began.

6. As Officers McHugh and Velasquez drove on Columbia Road in Uphams Corner several minutes later, they noticed two males (one of who had dreadlocks) and 1 female walking together near the intersection of Columbia Road and Dudley Street. The officers watched as this group (that included individuals who matched certain characteristics of the persons who had been in the Jeep involved in the high speed chase) cross Dudley Street and turn right onto Ramsey Street.1

7. After making these observations and noting a possible connection to the incident involving the Jeep, the officers drove their marked cruiser down Belden Street and took a right turn on Belden Square where they parked, got out, and walked onto Ramsey Street so that they could stop and speak to the group of 3 that they had seen walking in that direction from Columbia Road.

8. After the officers began walking, they saw and approached the 3 people who they had watched walk up Ramsey Street moments before. Officer McHugh (who like his partner was in uniform) greeted the group by asking them, "Hey, how are you guys doing?

---

1 Following the incident described herein and the recovery of the gun after it had been discarded by **LIMA**, the Jeep was located in the rear of 48 Virginia Street, about 2 blocks away from the area where the officers first saw **LIMA**, and the tow individuals he was with.

-3-

Where are you coming from?." One of the males (who Officer Velasquez immediately identified as ANGELO TEXEIRA and knew to have an outstanding warrant and one or more felony convictions) responded by saying, "Hey what's up?"

9. The second male (later identified as **LIMA**) had a much different reaction to the approach of the police. Shortly after Officer McHugh greeted the group, **LIMA** grasped at his waist, turned around and began running away from the officers, going first across Ramsey Street and then running down Ramsey Street back towards Dudley Street and the CVS Store at the corner.

10. Officer McHugh ran after **LIMA** and noted that, as **LIMA** was running, **LIMA** kept his hands at his waist (which, like the initial grab at the waist **LIMA** made when the officers first approached, Officer McHugh knew to be a characteristic of a person carrying a weapon or other contraband in his waist or pocket and trying to make sure that it did not drop or slip).

11. When **LIMA** got to the area of the CVS Store (an area well lit by street and commercial lighting), Officer McHugh was approximately 15 feet behind him. As Officer McHugh turned the corner onto Dudley Street, he saw **LIMA** remove a silver colored object that he believed to be a handgun from his waist and throw

it into a garbage can in front of the CVS Store and reported that over the radio.

12. Officer McHugh continued to chase **LIMA**. **LIMA** did not stop, instead turning up Belden Street where he was intercepted by MSP Trooper Clement and BPD Officer Anderson, who we able to stop and secure **LIMA**.

13. Officer McHugh immediately returned to the trash can into which he had just seen **LIMA** throw what Officer McHugh thought was a gun. He located the gun in the trash can and reported its presence over the radio for a second time so that other officers could come and photograph and process it. The firearm was photographed in place and examined by a thermal imaging device (which showed it to be radiating heat, thereby indicating that it had only recently been placed in the trash can). A white cell phone (which **LIMA** admitted was his) was also recovered along **LIMA**'s path of flight and car keys fitting the red Jeep, a marijuana grinder, and other items were also recovered near the area of the first encounter between the police and the group including **LIMA** and TEXEIRA.

14. The firearm discarded by **LIMA** during the pursuit and recovered from the trash can in front of the CVS is a Taurus

Model PT911, 9MM semiautomatic pistol bearing serial number TTH54820. The firearm, which had been reported stolen from a vehicle in Brewer, Maine in August, 2009, was loaded with 10 rounds of 9MM ammunition in the magazine contained in the gun.

15. After the suspect firearm and ammunition were recovered from **LIMA**, they were inspected by ATF S/A Mattheu Kelsch, who is trained to perform interstate commerce nexus examinations. S/A Kelch examined the firearm and the ammunition recovered from **LIMA**, determined that they were a "firearm" and "ammunition" for purposes of federal law, and determined that they were each manufactured outside Massachusetts, meaning that they had traveled across state lines or international boundaries prior to being seized in Dorchester on November 13, 2010.

16. I have reviewed **LIMA**'s criminal record as maintained by the Massachusetts Criminal History Systems Board. It reveals, among other things, that **LIMA** was convicted in Quincy District Court in 2007 of Resisting Arrest. Based on my training and experience, I know this crime is punishable by a term of imprisonment exceeding one year under Massachusetts law.

17. Based on the foregoing, I submit that there is probable cause to believe that, on or about November 13, 2010, **ANTHONY**

**LIMA,** having been previously convicted of a crime punishable by a term of imprisonment exceeding one year, did posses, in and affecting commerce, a firearm and ammunition in violation of Title 18, United States Code, Section 922 (g)(1).

LISA RUDNICKI
Special Agent, ATF

Sworn and subscribed to before me this ___ day of December, 2010.

LEO T. SOROKIN
U.S. Magistrate Judge